[Cite as *In re Bailey*, 2015-Ohio-413.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101108**

**IN RE: PETITION OF APPELLANT
MELISSA BAILEY FOR CERTIFICATE OF
QUALIFICATION OF EMPLOYMENT**

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-815966

**BEFORE:** E.T. Gallagher, J., Celebrezze, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** February 5, 2015

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender

BY: Erika B. Cunliffe
Assistant Cuyahoga County Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Charles E. Hannan
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

EILEEN T. GALLAGHER, J.:

{¶1} Petitioner, Melissa Bailey ("Bailey"), appeals from the trials court's denial of her petition for a Certificate of Qualification for Employment ("CQE"). Finding no merit to the appeal, we affirm.

{¶2} In 1997, Bailey pleaded no contest and was found guilty of domestic violence, a misdemeanor of the first degree. She was sentenced to two years of probation. In 2000, Bailey pled guilty to felonious assault, a felony of the second degree and was sentenced to two years in prison. These convictions barred Bailey from occupational licensing under Ohio law.

{¶3} On October 23, 2013, Bailey, pursuant to R.C. 2953.25, petitioned the state of Ohio, pro se, for a CQE. On November 4, 2013, the trial court ordered the probation department to complete an investigation regarding her petition, pursuant to R.C. 2953.25(C)(1). On February 10, 2014, after receiving the investigation, the trial court denied Bailey's petition without opinion.

{¶4} On March 3, 2014, Bailey moved the trial court to reconsider, seeking findings as to why the trial court denied her petition. On March 12, 2014, Bailey filed her notice of appeal. On March 24, 2014, the trial court issued an order, stating:

> Upon review of the presentence investigation prepared in case # CR 396329, the certificate of qualification of employment investigation, and the plaintiff's Cleveland Municipal Court record, the court again denies the plaintiff's request for a certificate of qualification of employment. Given the plaintiff's past record which includes a violent felony committed with a deadly weapon, two misdemeanor arrests, and 16 traffic citations from 1996 up to and including 2012, with a driving under suspension in 2009, the court is concerned that granting the petition would pose an unreasonable risk to the safety of the public.

**{¶5}** Bailey now appeals, arguing in her sole assignment of error that the trial court erred in denying her petition for a CQE because (1) the decision is contrary to the applicable law, (2) the decision lacks actual support, and (3) the trial court did not afford her the opportunity for a hearing. The issues raised are of first impression in this court.

I

**{¶6}** Concerned with the rising number of people with criminal histories who would be barred from holding state-licensed employment, the General Assembly took action in two separate bills to address the impact that collateral consequences had on the ability of persons with criminal records to obtain employment.

**{¶7}** The first action, the creation of a Certificate of Achievement and Employability ("CAE"), was codified in R.C. 2961.22 and enacted in 2011 as part of H.B. 86. Both current prisoners and those prisoners under supervised parole or postrelease control may obtain a CAE. Its purpose is to relieve the applicant of one or more "mandatory civil impacts" of a conviction. A "mandatory civil impact" is defined in R.C. 2961.21(D)(1)(c) as any section of the Revised Code or Administrative Code that creates a penalty, disability, or disadvantage that is automatically triggered solely by a person's conviction; is imposed on a person, licensing agency or employer; and that precludes a person with a criminal record from obtaining licensure or employment, precludes an agency from issuing a license or certification to a person with a criminal record, or precludes a business from being certified or from employing the person with a criminal record.

**{¶8}** Issuance of a CAE grants a prisoner "relief from one or more mandatory civil impacts that would affect a potential job within a field in which the prisoner trained as part of the prisoner's in-prison vocational program." R.C. 2961.22(C)(1). A CAE creates a "rebuttable

presumption that the person's criminal convictions are insufficient evidence that the person is unfit for the license or certification in question," although "the agency may deny the license or certification for the person if it determines that the person is unfit for issuance of the license." R.C. 2961.23(A)(1).

{¶9} In addition, the statute provides protections to employers who hire a person who has been issued a CAE, by stating that a CAE is an absolute defense to the element of the employer's actual or constructive knowledge in any subsequent action filed against the employer for negligent hiring based on the employer's actual or constructive knowledge of the CAE holder's incompetence or dangerousness. *See* R.C. 2961.23(B)(1).

{¶10} The second action the General Assembly undertook was the creation of a CQE under R.C. 2953.25, passed in 2012[1] under Am.Sub.S.B. 337. As stated in the Ohio Legislative Service Commission Final Analysis of Am.Sub.S.B. 337, the CQE:

> [C]reates a mechanism by which an individual who has been convicted of or pleaded guilty to an offense, who for a specified period of time has been released from incarceration and all supervision imposed after release or has received a final release from all other sanctions imposed, and who is subject to a "collateral sanction" may obtain from the court of common pleas of the county in which the individual resides a "certificate of qualification for employment" that will provide relief from certain bars on employment or occupational licensing.

R.C. 2953.25(A)(1) defines a "collateral sanction" as:

> [A] penalty, disability, or disadvantage that is related to employment or occupational licensing, however denominated, as a result of the individual's conviction of or plea of guilty to an offense and that applies by operation of law in this state whether or not the penalty, disability, or disadvantage is included in the sentence or judgment imposed.

---

[1] A more recent version of R.C. 2953.25 became effective September 19, 2014, but the only substantive difference between the amended statute and the version in effect at the time Bailey filed her petition is that a court of common pleas that receives a petition for a CQE may now direct the clerk of court to process and record all notices required under the section.

**{¶11}** An individual who committed a felony offense that resulted in a collateral sanction may apply for a CQE at any time after one year has expired from release from incarceration and any period of postrelease supervision, or one year from final release from all community control sanctions, as appropriate. *See* R.C. 2953.25(A)(4). The petition must be made on a copy of a form prescribed by the division of parole and community services. *See* R.C. 2953.25(B)(3); Ohio Adm.Code 5120-15-01(D). The form must be submitted to the division of parole and community service, who examines the form for completeness and, if the form is complete, forwards it to the court of common pleas. *See* R.C. 2953.25(B)(5)(a); Ohio Adm.Code 5120-15-10(K).

**{¶12}** Upon receiving a completed petition for a CQE, the court of common pleas must "notify the prosecuting attorney of the county in which the individual resides that the individual has filed the petition." R.C. 2953.25(B)(5)(b). The court of common pleas must also inform other courts across the state in which the individual has been convicted for an offense other than that from which the individual is seeking relief, and those courts may offer comments regarding the possible issuance of a CQE. *See* R.C. 2953.25(B)(5)(b).

**{¶13}** Upon receiving a petition for a CQE, the court must "review the individual's petition, the individual's criminal history, all filings submitted by the prosecutor or by the victim in accordance with rules adopted by the division of parole and community services, and all other relevant evidence." R.C. 2953.25(C)(1). The court may, in its discretion, grant the petition and issue a CQE if it finds that the individual seeking the petition has established all of the following by a preponderance of the evidence:

> (a) Granting the petition will materially assist the individual in obtaining employment or occupational licensing.

(b) The individual has a substantial need for the relief requested in order to live a law-abiding life.

(c) Granting the petition would not pose an unreasonable risk to the safety of the public or any individual.

R.C. 2953.25(C)(3).

{¶14} R.C. 2953.25(B) creates two classes of individuals who can petition the court for a CQE: (1) persons subject to one or more collateral sanctions as a result of being convicted of or pleading guilty to an offense, and who either has served a term in a state correctional institution for any offense, or has spent time in a department-funded program for any offense, and (2) an individual who is subject to one or more collateral sanctions as a result of being convicted of or pleading guilty to an offense and who is not in a category described in division (B)(1).  R.C. 2953.25(B)(1)-(2).   If a court of common pleas that receives an individual's petition for a CQE under division (B)(2) of this section, or that is forwarded a petition for such a CQE under division (B)(5)(a) of this section, denies the petition, the individual may appeal the decision to the court of appeals "only if the individual alleges that the denial was an abuse of discretion on the part of the court of common pleas."    R.C. 2953.25(C)(6).

{¶15} Like the CAE, a CQE immunizes an employer in any proceeding on a claim against the employer for negligent hiring "as to the claim if the employer knew of the certificate at the time of the alleged negligence."   R.C. 2953.25(G)(2).

{¶16} Bailey served a term in a state correctional institution, so she filed her petition under R.C. 2953.25(B)(1) and is not limited to appealing issues on grounds other than an abuse of the court's discretion.

II

**{¶17}** We first address Bailey's claim that the court erred by denying the petition without first affording her a hearing or "an opportunity to explain her situation and address the court's concerns." She argues that her right to a hearing is grounded on basic due process.

**{¶18}** R.C. 2953.25 makes no express provision for a hearing, nor is the right to a hearing implied in the statute. The procedure set forth in the statute provides for a summary proceeding, as demonstrated by the requirement that the court "shall decide whether to issue the certificate within sixty days after the court receives or is forwarded the completed petition and all information requested for the court to make that decision." R.C. 2953.25(C)(2). To be sure, the 60-day period in which to rule on the petition may be extended at the request of the petitioner, but it is important to understand that the time period in which the court must rule on the petition begins once *the court* is satisfied that it has "all information requested" to make the decision whether to grant the petition. *Id.* This indicates that the court has the discretion to decide when it has enough information to rule on the petition, and it may decide that it needs no additional information beyond that contained in the petition and filings submitted by the prosecuting attorney and the victim, if any.

**{¶19}** None of this is to say that a petitioner may not request a hearing. Although the statute does not require the court to hold a hearing on a petition, it does not expressly forbid one. And to the extent a requested hearing might cause some tension with the 60-day period in which the court must rule on the petition, the petitioner can ask that the period be extended. But the fact remains that Bailey did not request a hearing. By not requesting a hearing, she has no viable complaint that the court erred by failing to conduct a hearing.

**{¶20}** What is more, there is no merit to Bailey's argument that a hearing was needed to allow her to explain her prior misconduct. She complains that the online form she used for the

petition asks the applicant to "briefly" state the nature of the underlying offense. However, she is not referring to the petition itself but to the online workbook about CQE petitions created by the Ohio Justice and Policy Center, which suggests the petitioner be brief and "DO NOT retell the complete story of each offense or try to explain them away." *See* Appellant's Brief, Exhibit 1, at 8. Being "brief" was advice from the Ohio Justice and Policy Center, an advocacy group, not an official admonition from state authorities nor from the CQE petition itself. Bailey was free to include as much information as she believed necessary to support the petition, and her decision to take the advice of an advocacy group when completing the petition is not grounds for us to find that the court erred.

{¶21} Bailey next argues that she was entitled to a hearing as a matter of fundamental due process. We agree with the state that the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine whether a hearing is required as a matter of constitutional concern is inapplicable because there is no constitutionally-protected interest at risk. A due process right would arise only where the applicant has a "legitimate claim of entitlement" to the CQE, not a mere "unilateral expectation." *See generally Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As a convicted felon, Bailey was disabled from holding certain occupational licenses. If she had some expectation that the petition would be granted, it was a unilateral expectation because the court had the sole discretion to lift the disability.

{¶22} The issuance of a CQE is a privilege enacted by the General Assembly, not a right. In similar circumstances, the courts have held that there is no right to have one's record of conviction sealed, *State v. Simon*, 87 Ohio St.3d 531, 533, 721 N.E.2d 1041 (2000). There is also no expectancy of parole that creates a constitutional liberty interest. *Hattie v. Anderson*, 68

Ohio St.3d 232, 233, 626 N.E.2d 67 (1994). A CQE does not involve a cognizable liberty interest, so there is no right to a hearing as a matter of due process.

III

**{¶23}** The substantive issue on appeal is that the court abused its discretion by denying the petition for a CQE. Bailey argues that her petition established the three criteria necessary for issuing a CQE as set forth in R.C. 2953.25, therefore the court's refusal to grant the CQE lacked factual support and was against the weight of the evidence.

**{¶24}** An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). The term "abuse of discretion" means "an unreasonable, arbitrary, or unconscionable action." *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, 914 N.E.2d 159, ¶ 15. It is "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." (Citations and quotations omitted.) *State v. Hancock*, 108 Ohio St.3d 57, 77, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130. This court has previously acknowledged that the abuse of discretion standard is a very high standard and "'evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof * * *.'" *Aponte v. Aponte*, 8th Dist. Cuyahoga Nos. 77394 and 78090, 2001 Ohio App. LEXIS 529 (Feb. 15, 2001), quoting *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984).

**{¶25}** First, Bailey clearly established that granting her petition would materially assist her in obtaining occupational licensing, which she currently cannot obtain due to her past convictions. Bailey's petition listed several fields of employment she would be interested in pursuing if she were granted a CQE, including social work, counseling, security, real estate, and

employment at a casino. Second, Bailey stated in her petition that she "has a substantial need for the relief requested in order to live a law-abiding life." Although Bailey is certainly required to live a law-abiding life even were she to be denied her petition, there is no evidence in the record to rebut her claim. Thus, Bailey established the first two factor's of R.C. 2953.25(C)(3).

{¶26} The third factor remains; whether granting Bailey's petition would pose an unreasonable risk to the safety of the public or any individual. In denying her petition,[2] the court stated the following:

> Upon review of the presentence investigation prepared in case # CR 396329, the certificate of qualification of employment investigation, and the plaintiff's Cleveland Municipal Court record, the court again denies the plaintiff's request for a certificate of qualification of employment. Given the plaintiff's past record which includes a violent felony committed with a deadly weapon, two misdemeanor arrests, and 16 traffic citations from 1996 up to and including 2012, with a driving under suspension in 2009, the court is concerned that granting the petition would pose an unreasonable risk to the safety of the public.

{¶27} Bailey argues the trial court abused its discretion in denying her petition based on the court's concern that she would pose an unreasonable risk to the safety of the public. Bailey argues she has lived a law-abiding life since her release from prison in 2003. Despite the fact that her prior conviction was violent in nature, Bailey argues that it occurred more than ten years ago.

{¶28} It is evident from the trial court's entry that it disagreed. The trial court took into consideration the evidence presented in Bailey's petition, including the entirety of her criminal

---

[2] The original judgment entry denied the petition without opinion. Bailey filed a motion for reconsideration of that judgment, but filed a notice of appeal before the court could rule on reconsideration. When the court issued the judgment entry on reconsideration, jurisdiction was vested with us. This would ordinarily render the judgment entry on reconsideration void, but we find that this entry clarified the court's decision for denying the petition, so we construe it as being issued in aid of the appeal.

history, and clearly found the risk posed to the public by granting Bailey's petition was unreasonable.

{¶29} We note that a petitioner's criminal history is more often than not going to be at the heart of a trial court's decision to grant or deny a petition. The type of conviction, the amount of time served, and the length of time since the petitioner's last conviction are all factors that a trial court may consider when reviewing the probation department's investigation. The statute itself confers upon the trial court broad discretion in determining whether a particular petitioner poses an unreasonable risk to the safety of the public or any individual. Had the legislature intended for trial courts to automatically issue CQEs to every petitioner, regardless of their criminal history, the statute would not have afforded the trial court any discretion when ruling on these petitions.

{¶30} The purpose behind the statute is commendable. However, reasonable minds can differ as to what constitutes an unreasonable risk to the safety of the public. "This court's role is to determine whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made." *Wilmington Steel Prods. Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). "[W]here the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 67.

{¶31} An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of will, of a determination, made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the

exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

**{¶32}** Based on the record before us, including the trial court's March 24, 2014 entry, we simply cannot say that the trial court abused its discretion in denying Bailey's petition.

**{¶33}** Accordingly, Bailey's sole assignment of error is overruled.

**{¶34}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., A.J., CONCURS;
MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

MELODY J. STEWART, J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶35}** I concur with the conclusion that Bailey had no right to a hearing on her petition for a CQE. I respectfully dissent, however, from the majority's holding that the court did not abuse its discretion by denying the CQE. Without citing any facts or the reasons in support of the petition, or for that matter engaging in any analysis of the court's refusal to grant the petition, the

majority summarily affirms the denial of Bailey's petition on nothing more than its conclusion that the court "disagreed" with Bailey.

{¶36} Felony and misdemeanor convictions in Ohio carry certain collateral consequences incident to punishment. One study has determined that there are approximately 800 civil consequences to criminal convictions broadly lumped into the following categories: restoration of rights; civil rights, public employment and doing business with the state; care, custody, and control of children and familial rights; regulated professions, occupations, trades, businesses, and industries; and other privileges and safety concerns (for example, the right to vote or bear arms). *See Frank, Travis, Reitler, et al.*, *Collateral Consequences of Criminal Conviction in Ohio*, 15-16 (2011), http://www.uc.edu/content/dam/uc/ccjr/docs/reports/Collateral%20 Consequences%20Final%20Report.pdf (accessed January 12, 2015).

{¶37} Criminal convictions affect a large number of state-licensed professions, occupations, and trades. For example, R.C. 4776.02 requires criminal record checks for certain professionally licensed professionals:

> In this context, a professionally licensed person is defined as persons who have obtained a permanent or temporary license, permit, certificate, registration, qualification, admission in certain professions, including controlled substance manufacturing or wholesaling; public accounting; architecture; landscape architecture; auctioneering, barbers, debt adjusting, cosmetology and hair styling; dentistry and related occupations; funeral directors and embalmers; nursing; optometry; pawnbroking; precious metals dealers; pharmacy and distributors of dangerous drugs; physicians and surgeons; physician assistants; psychologists and school psychologist; chiropractic; real estate brokering, sales, and appraisals; sanitarians; junkyard operation; motor vehicle salvage dealing; steam engineering; veterinary medicine; hearing aid dealing and fitting; investigation and security; nursing home administrating; speech-language pathology and audiology; occupational and physical therapy; counseling and social work; dietetics; respiratory therapy; and the practice of law.

*Frank, Travis, Reitler*, *supra*, at 62-63.

**{¶38}** These are just a sampling of collateral consequences attached to Ohio felony and misdemeanor convictions. *See Mossoney and Roecker*, *Ohio Collateral Consequences Project: Executive Summary*, 36 U.Tol.L.Rev. 611 (2005). The American Bar Association, through a project called the "National Inventory of the Collateral Consequences of Conviction," has established a website containing a state and federal database of collateral consequences by jurisdiction. *See* http://www.abacollateralconsequences.org/map/ (accessed January 12, 2015).

**{¶39}** Collateral consequences attached to persons who have committed crimes are becoming an acknowleged barrier to those offenders seeking to reenter life outside of prison or jail. The National Conference of Commissioners on Uniform State Law, in the prefatory note to the Uniform Collateral Consequences of Conviction Act, states:

> The growth of the convicted population means that there are literally millions of people being released from incarceration, probation and parole supervision every year. They must successfully reintegrate into society or be at risk for recidivism. Society has a strong interest in preventing recidivism. An individual who could have successfully reentered society but for avoidable cause reoffends generates the financial and human costs of the new crime, expenditure of law enforcement, judicial and corrections resources, and the loss of the productive work that the individual could have contributed to the economy. Society also has a strong interest in seeing that individuals convicted of crimes can regain the legal status of ordinary citizens to prevent the creation of a permanent class of "internal exiles" who cannot establish themselves as law-abiding and productive members of the community. Cf. Nora V. Demleitner, *Preventing Internal Exile: The Need For Restrictions On Collateral Sentencing Consequences*, 11 Stan.L. & Policy Rev. 153 (1999).

*Id*. at 1-2.

**{¶40}** It is no understatement to describe the consequences of collateral disabilities as a vicious circle. The federal government has instituted a "zero tolerance" policy under which any "drug-related or violent criminal activity or any felony conviction" is grounds for the termination of a lease held for publicly assisted housing. *See* 42 U.S.C. 1437d(l)(4)(A)(ii). It has likewise

imposed bans, stretching up to permanent ineligibility, on anyone convicted of a drug-related felony from receiving federally funded food stamps and cash assistance. *See* 21 U.S.C. 862a. Under this regime, parolees who are attempting to reintegrate into society must do so with no access to public assistance and a very limited range of jobs available to them. With little to no prospects for a good paying job and no public assistance, even temporary assistance, it is not hard to predict the outcome for many parolees. Even in Ohio, that has opted out of the federal ban on aid for certain felons (*see* R.C. 5101.84), the unavailability of a job means that at best many people upon whom certain collateral sanctions have been imposed will continue to require public assistance; at worst, they will reoffend and be sent back to prison. Either way, the burden on public resources continues.

{¶41} R.C. 2953.25 is a measured legislative response to the employment aspect of collateral disabilities. It balances the need for public safety with the desire to allow people with felony or misdemeanor convictions to reintegrate into society by giving them the opportunity to pursue jobs that they had been disqualified from holding as a result of their criminal convictions. It is important to understand that R.C. 2953.25 does not guarantee licensure, much less a job — it simply removes the disqualification from applying. Assuming that a court issues a CQE, the decision to hire or issue an occupational license to someone with a conviction is left to the applicable licensing and/or hiring authority.

{¶42} I agree with the majority that the only issue before the court in its application of R.C. 2953.25(C)(3) was whether Bailey established by a preponderance of the evidence that "[g]ranting the petition would not pose an unreasonable risk to the safety of the public or any individual[.]" Denying the petition, the court focused on Bailey's underlying conviction and her

16 traffic citations, stating that it was "concerned" that granting the petition would pose an unreasonable risk to the safety of the public.

{¶43} Bailey's prior conviction for felonious assault was a given; it was the reason why she needed to petition the court for a CQE. The existence of a prior offense cannot be an automatic ground for denying a petition — that would undermine the very intent behind the statute. But I agree that the nature of, and the circumstances surrounding, a petitioner's criminal history are the most obvious factors the court would consider when deciding whether granting the petition would pose an unreasonable risk to the public. R.C. 2953.25(B)(1) speaks in terms of a person having committed an "offense," which is defined in R.C. 2953.25(A)(6) as "any felony or misdemeanor under the laws of this state" that leads to a collateral sanction that is related to employment or occupational licensing. Although the statute does not tell the court to consider the severity of offenses, the broad discretion granted to the court necessarily compels the conclusion that the court could find that the circumstances behind the commission of some offenses undermines its confidence in a petitioner's claim that issuing a CQE would not jeopardize the public safety. If the legislature had intended for automatic issuance of a CQE, it would not have given the courts any discretion when ruling on the petitions.

{¶44} While the nature of Bailey's underlying conviction was relevant to the question of whether granting a CQE would pose an unreasonable risk to the public safety, that consideration is relevant only to the extent that there is a nexus between the underlying conviction and the petitioner's employment in a field for which a disability applied. This must be the case because a criminal conviction does not bar a person from all employment — the disability applies only to certain occupations for which there is an occupational licensing requirement. Bailey's petition stated that she had previously been employed in non-occupationally licensed fields without

incident, so the court's rejection of her petition could only rationally be based on there being a direct correlation between her working in a licensed field and that employment putting the public at unreasonable risk. The court made no such determination, nor could it based on the record before it.

{¶45} Exactly why Bailey's prior conviction would make her an unreasonable threat to the public safety in jobs requiring licensure was not addressed by the court nor discussed by the majority. Bailey's petition for a CQE listed several potential fields of employment that she might pursue: social worker; chemical dependency counselor; real estate; casino; and security. There is no direct connection to Bailey's prior criminal offense and these occupations. This is not a case where Bailey committed some kind of fraud or theft and sought a CQE for employment in fields that might, for example, involve the handling of public funds.

{¶46} Apart from failing to address why granting Bailey a CQE would pose an unreasonable risk to the public safety, the court appeared to equate Bailey's possession of a CQE with being granted an occupational license. A CQE does not guarantee an occupational license; it simply removes the disability from occupational licensing. In reality, the CQE is nothing more than a piece of paper that allows one to apply for occupational licensing — it does not guarantee licensing, much less a job. R.C. 2953.25(D) makes it plain that possession of a CQE "lifts the automatic bar of a collateral sanction," but that a "decision-maker" from the occupational licensing board "shall consider on a case-by-case basis whether to grant or deny the issuance or restoration of an occupational license or employment opportunity * * *." So even if issued a CQE, Bailey has no right to any occupational license. If Bailey does not currently pose a threat of danger to the public safety (and there is no argument that she does), issuing a CQE does not somehow transform her into a threat of danger to the public.

{¶47} Apart from abstract concerns about whether Bailey's possession of a CQE would make her a threat to public safety, the court did not appear to consider that individual licensing boards are better suited to determine on an individual basis whether Bailey and others like her would pose a threat to the public safety if granted an occupational license. The Ohio Supreme Court has recognized the inherent expertise of licensing boards: "[W]hen reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). The decision whether to grant an occupational license rests with the applicable board, so the licensing board is ultimately in the best position to determine whether an applicant poses a risk to the public if he or she were granted a license to engage in that particular profession or field.

{¶48} The circumstances leading to Bailey's felonious assault conviction are unclear, but it appears that she committed the offense with the use of a knife. She pleaded guilty and served two years in prison before being released in January 2003. While in prison, Bailey was a model prisoner, having been admitted into the prison's "Trusty Program" which allowed her to work on road maintenance crews outside the prison confines. She completed anger management programs, alcohol and drug education programs, and educational and career success programs.

{¶49} Bailey's petition showed that she had lived a law-abiding life since being released from prison and that her receipt of a CQE would not change that. There is nothing in the record to support the court's "concern" that, if granted a CQE, Bailey would pose an unreasonable risk to the safety of the public. Additionally, this is not a case where a petition for a CQE has been filed at the earliest opportunity to do so — under those circumstances, a court might reasonably be circumspect in granting a petition because an insufficient amount of time had elapsed in which

the court could confirm whether the petitioner posed an unreasonable threat to the public safety. While Bailey's prior conviction was for an offense of violence, it has been more than ten years since her release from prison for committing that offense. Since then, she has not been accused of any criminal offenses apart from traffic citations. What is more, Bailey showed that she had been intermittently employed since her release from prison without any hint that she posed a threat to the public safety. The court ignored this history and ruled, in essence, that Bailey's present law-abiding life would change into one that would pose an unreasonable risk to public safety solely by virtue of being granted a CQE.

{¶50} The court's mention of Bailey's traffic record as posing a risk to the public safety bears no relation to the purpose of a CQE. The record does not show what Bailey's traffic offenses were, but even the state characterizes them as "minor." While it is true that repeated traffic offenses could pose a risk to the public safety, the court failed to connect these traffic offenses and the risks associated with them to the CQE. Nor for that matter did the court note the time frame in which these 16 infractions occurred — if they occurred over a 20-year period, concerns about her being a threat to public safety would be considerably diminished. It does not appear that Bailey sought the CQE for an occupation in which driving would be a job requirement. Nor does the record show that Bailey would have to rely exclusively on driving as a means of traveling to a job. In any event, the traffic citations Bailey received are unrelated to whether she could perform a job without posing an *unreasonable* risk to public safety. I venture to say that any number of people have less than perfect driving records, yet pose no more of a threat to the public safety when they perform jobs for which driving is not an essential job qualification than anyone else. And to the extent that driving would be a job qualification, the

occupational licensing board would be in a better position to determine whether Bailey's driving record would be cause for concern in the licensing process.

{¶51} A court's primary goal when interpreting a statute is to effectuate legislative intent. *Carter v. Youngstown Div. of Water*, 146 Ohio St. 203, 65 N.E.2d 63 (1946), paragraph one of the syllabus. R.C. 2953.25 implements a new way of thinking about how to deal with the rising number of people with collateral sanctions attaching to their criminal convictions. Not only does the statute facilitate a person's reentry into the job market, it insulates employers from liability for negligent hiring based on the employee having a criminal record.

{¶52} Bailey is exactly the kind of person who R.C. 2953.25 seeks to benefit. By all accounts, she has rehabilitated herself since her release from prison in 2003. In addition to the programs she completed in prison, she earned a bachelor's degree in business administration. This was no small feat for a single mother of three children. Although Bailey has held jobs since her release from prison, she has recently struggled to find employment. As she stated in her petition:

> I have a 2nd degree felony which means my felony cannot be expunged but if you grant me this certificate it would benefit me and my family. They tell you on your way out of prison; "Go and become a productive member of society," but how can you when no one will give you a chance. I am constantly being turn[ed] down job after job and it's also the same way with housing. I want to be able to provide for my family. I am extremely ashamed and remorseful about my actions and I wish I could turn back the hands of time but I can't. Although I was sentenced to two years, I feel like it was a life sentence and my children are caught up in the cross fire. I want to provide for my family but instead we're almost homeless and I don't know what else to do. We are suffering financially and emotionally. This certificate can change my family's life.
>
> This certificate will help me in obtaining employment because it will let the employer know that I am not a high risk and that will give the employer a piece [sic] of mind and with that I finally can get a real interview where the person can meet the real me and base whether I get the job or not on my skills and not my felony.

{¶53} Granting Bailey a CQE will not erase her criminal record, but it will give her a chance to find employment. This is the goal of the statute. The court's judgment failed to consider these goals and arbitrarily found that granting the CQE would pose an unreasonable risk to public safety when there was no evidence to support that conclusion. I would sustain the judgment in part and remand with orders to issue the CQE.