[Cite as *Harris v. Certificate of Qualification of Emp. Petition*, 2019-Ohio-3658.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LASONYA J. HARRIS,                    :

    Plaintiff-Appellant,          :

                                 No. 107828

    v.                            :

CERTIFICATE OF QUALIFICATION         :
OF EMPLOYMENT PETITION,

                              :

    Defendant-Appellee.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 12, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-901369

---

### *Appearances:*

The Legal Aid Society of Cleveland, Arcola A. Whatley, and Julie C. Cortes, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine E. Mullin, Assistant Prosecuting Attorney, *for appellee.*

MARY J. BOYLE, J.:

{¶ 1} Plaintiff-appellant, Lasonya J. Harris, appeals from the trial court's decision denying her petition for a certificate of qualification for employment ("CQE"). She raises one assignment of error for our review:

> It was an abuse of discretion for the trial court to deny appellant's petition for a certificate of qualification for employment in the absence of any analysis pursuant to R.C. 2953.25(C)(3).

{¶ 2} Finding merit to her assignment of error, we reverse and remand.

## I.     Procedural History and Factual Background

{¶ 3} On July 27, 2018, Harris filed a petition for a CQE. In the petition, Harris stated the following as to why she was requesting the CQE:

> In order to return to work, my employer stated I needed to show something that my criminal records had been sealed. Unfortunately, I'm not eligible to seal my record. I have been working as a home health aide for 8 years and I would like to return to this profession in which I have training, certification and experience, but my criminal record is creating a barrier.

{¶ 4} In her appellate brief, Harris explains that she was not eligible to seal her criminal record based on the version of R.C. 2953.31 effective at the time of her petition. Under that version, "eligible offender" was defined as an individual who was convicted of "not more than two misdemeanor convictions, or not more than one felony conviction and one misdemeanor conviction in this state or any other jurisdiction." Harris said that she did not qualify as an "eligible offender" because she had three misdemeanor convictions, leaving the CQE as her "only redress to return to work under her employer's conditions."

{¶ 5} Harris said that she was put on leave by her employer after working for a full year due to her criminal record, but that her employer informed her that she could return to work once she "had taken care of" her criminal record. She stated that her criminal record was "hinder[ing] [her] from using [her] experience and certification to take care of [her] children and family[,]" prohibiting her from pursuing her dream of becoming a state-tested nursing assistant, and putting "a substantial financial strain on [her] ability to provide" for her children and household. She stated that she was not a danger to the public or other individuals. She indicated that she planned to use the CQE to obtain an occupational license from the Ohio Board of Nursing to work as a state-tested nursing assistant.

{¶ 6} Harris's petition reflected that she was convicted of two counts of child endangering (first-degree misdemeanor) in 2007, making false alarms (first-degree misdemeanor) in 2010, and menacing by stalking (fourth-degree misdemeanor) in 2016.

{¶ 7} In July 2018, the trial court ordered the probation department to complete a CQE investigation. The investigation showed that Harris was also convicted of disorderly conduct (minor misdemeanor) in 2003, making false alarms (first-degree misdemeanor) in 2004, menacing (fourth-degree misdemeanor) in 2012, disorderly conduct (minor misdemeanor) in 2014, and telecommunications harassment (first-degree misdemeanor) in 2016. Additionally, the investigation showed that Harris reported that she worked for various home-care companies from 2009 to 2018.

{¶ 8} The report also stated that Harris owed $262.70 for her convictions for menacing and telecommunications harassment in Cuyahoga County (Cuyahoga C.P. No. CR-16-611225), although the trial court's docket states that Harris currently owes only $187.10.[1]

{¶ 9} In September 2018, the trial court issued a judgment entry stating, "[c]ertification of qualification of employment for the petitioner is denied." The trial court also waived costs for the application fee based on Harris's poverty affidavit.

{¶ 10} It is from this judgment that Harris now appeals.

## II. Law and Analysis

{¶ 11} In her sole assignment of error, Harris argues that the trial court abused its discretion when it denied her petition for a CQE because it failed to provide any analysis pursuant to R.C. 2953.25(C)(3).

{¶ 12} "Concerned with the rising number of people with criminal histories who would be barred from holding state-licensed employment," the General Assembly passed R.C. 2953.25 in 2012 under Am.Sub.S.B. 337, which created the CQE meant to "address the impact that collateral [sanctions] had on the ability of persons with criminal records to obtain employment." *In re Bailey*, 8th Dist. Cuyahoga No. 101108, 2015-Ohio-413, ¶ 6. A CQE "immunizes an employer in any proceeding on a claim against the employer for negligent hiring 'as to the claim if the employer knew of the certificate at the time of the alleged negligence.'" *Id.* at

---

[1] At oral argument, Harris and the state said that neither party was given an opportunity to review the report.

¶ 15, citing R.C. 2953.25(G)(2). However, "R.C. 2953.25 does not guarantee licensure, much less a job — it simply removes the disqualification from applying. Assuming that a court issues a CQE, the decision to hire or issue an occupational license to someone with a conviction is left to the applicable licensing and/or hiring authority." *Bailey* at ¶ 41 (Stewart, J., dissenting).

{¶ 13} R.C. 2953.25 defines "collateral sanction" as

a penalty, disability, or disadvantage that is related to employment or occupational licensing, however denominated, as a result of the individual's conviction of or plea of guilty to an offense and that applies by operation of law in this state whether or not the penalty, disability, or disadvantage is included in the sentence or judgment imposed.

R.C. 2953.25(A)(1).

{¶ 14} Under R.C. 2953.25(B), two classes of individuals may petition a court of common pleas for a CQE. To file a petition, an individual must be subject to one or more collateral sanctions as a result of being convicted of or pleading guilty to an offense and

(1)     either has served a term in a state correctional institution for any offense or has spent time in a department-funded program for any offense; or

(2)     is not in a category described in division (B)(1) of this section.

{¶ 15} Individuals who seek a petition under (B)(1) must file a petition with the "designee of the deputy director of the division of parole and community services[,]" whereas individuals seeking a petition under (B)(2) may file a petition

within Ohio by filing it with the court of common pleas in the county in which the individual resides.  R.C. 2953.25(B)(2)(a).

{¶ 16} An individual may file a petition under (B)(1) or (2) for a felony offense at any time after one year has passed from release of incarceration and any period of postrelease control or one year after the individual's final release from all community control sanctions or for a misdemeanor offense at any time after six months have passed from release of incarceration and any period of postrelease control or six months after the individual's final release from all community control sanctions.  R.C. 2953.25(A)(4).

{¶ 17}  Upon receiving an individual's petition for a CQE under (B)(2), the court of common pleas must "notify the prosecuting attorney of the county in which the individual resides that the individual has filed the petition" and must also "notify all other courts in [the] state that it determines under this division were courts in which the individual was convicted of or pleaded guilty to an offense other than the offense from which the individual is seeking relief that the individual has filed the petition[.]"  R.C. 2953.25(B)(5)(b).[2]

{¶ 18}  The court must then "review the individual's petition, the individual's criminal history, [and] all filings submitted by the prosecutor or by the victim in accordance with rules adopted by the division of parole and community services, * * * and all other relevant evidence."  R.C. 2953.25(C)(1).  The court may also

---

[2] During oral argument, the state said that it was not notified that Harris filed a CQE petition until after Harris filed a notice of appeal.

"order any report, investigation, or disclosure by the individual that the court believes is necessary for the court to reach a decision on whether to approve the individual's petition for a [CQE]." *Id.* "[T]he court has the discretion to decide when it has enough information to rule on the petition, and it may decide that it needs no additional information beyond that contained in the petition and filings submitted by the prosecuting attorney and the victim, if any." *Bailey*, 8th Dist. Cuyahoga No. 101108, 2015-Ohio-413, at ¶ 18. A trial court may, but is not required to, hold a hearing. *Id.* at ¶ 18-19.

{¶ 19} Under R.C. 2953.25(C)(3), the issuance of a CQE is at the court's discretion as long as the court "finds that the individual has established all of the following by a preponderance of the evidence:

    (a)    Granting the petition will materially assist the individual in obtaining employment or occupational licensing.

    (b)    The individual has a substantial need for the relief requested in order to live a law-abiding life.

    (c)    Granting the petition would not pose an unreasonable risk to the safety of the public or any individual."

"[A] petitioner's criminal history is more often than not going to be at the heart of a trial court's decision to grant or deny a petition. The type of conviction, the amount of time served[, if any,] and the length of time since the petitioner's last conviction are all factors that a trial court may consider when reviewing the probation department's investigation." *Bailey* at ¶ 29.

{¶ 20} The court may not deny an individual's petition based on the submission of an incomplete petition. R.C. 2953.25(C)(4).

{¶ 21} If the court of common pleas denies an individual's petition under R.C. 2953.25(B)(2), the individual may appeal the decision to the court of appeals "only if the individual alleges that the denial was an abuse of discretion[.]" R.C. 2953.25(C)(6).

{¶ 22} Harris filed a petition on July 27, 2018. The petition shows that she was convicted of three misdemeanors. The investigative report, however, showed that Harris was also convicted of two minor misdemeanors, one fourth-degree misdemeanor, and two first-degree misdemeanors. This meant that Harris could file the petition six months after the expiration of a period of incarceration and postrelease control or after the expiration of her community control sanctions. She filed her petition pursuant to R.C. 2953.25(B)(2), and therefore is limited to appealing the trial court's denial of her petition on the basis that the court abused its discretion. Harris argues that the trial court abused its discretion by failing to provide any reasoning in denying her petition under R.C. 2953.25(C)(3).

{¶ 23} An abuse of discretion occurs when a trial court fails to "'exercise sound, reasonable, and legal decision-making.'" *Bailey*, 8th Dist. Cuyahoga No. 101108, 2015-Ohio-413, at ¶ 24, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900. An abuse of discretion means that the trial court's decision was "unreasonable, arbitrary, or unconscionable[.]" *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, 914 N.E.2d 159, ¶ 15.

{¶ 24} Harris acknowledges that R.C. 2953.25 "does not specifically state that the trial court is required 'to make delineated findings of fact or conclusions of law[.]'" As the state points out, the statute requires the trial court to make certain findings before *granting* a petition for a CQE, but does not require the same in denying one.

{¶ 25} The Tenth District has looked at this exact issue before in *In re Betsacon*, 10th Dist. Franklin No. 18AP-515, 2018-Ohio-5367. In that case, the appellant challenged the trial court's entry denying his petition, arguing that the entry was a "bare bone response" and that it failed to "provide subsequent reviewers any idea as to how or why the decision was made, making it difficult to review for appeal." *Id.* at ¶ 6. The Tenth District disagreed, stating:

> Appellant points us to no authority, statutory or otherwise, that supports his argument that the trial court was required to explain its reasons for denying the petition for CQE or provide a more detailed analysis of its determination to deny the petition. The text of R.C. 2953.25 does not include such a requirement.

*Id.* at ¶ 8. The court also noted that the appellant failed to request a hearing, leaving the court without a transcript that may "have provided some additional insight into the trial court's analysis." *Id.* at ¶ 9. The court further stated that the trial court's entry outlined the elements for granting a petition, and found that the appellant did not "suffer a collateral sanction as required by the statute[,]" and considered the "additional elements, one by one, finding [the appellant] did not establish the elements by a preponderance of the evidence." *Id.*

{¶ 26} While the Tenth District is correct that R.C. 2953.25 does not explicitly require a trial court to explain its reasons for denying a petition for a CQE, we find that a trial court must include its reasoning to allow for the necessary review on appeal.

{¶ 27} Harris's petition is similar to a petition for expungement under R.C. 2953.32. We have previously held that a trial court must place its findings on the record when denying or granting an application for expungement to allow appellate review of the court's discretion even though R.C. 2953.32, the expungement statute, like R.C. 2953.25 in this case, does not explicitly require a trial court to explain its reasons.

{¶ 28} For example, in *State v. M.D.*, 8th Dist. Cuyahoga No. 92534, 2009-Ohio-5694, we reviewed the trial court's judgment summarily denying the appellant's application to seal his record of conviction under R.C. 2953.32. We noted that our court, "as well as other appellate courts, have reversed a trial court's decision to deny an application pursuant to R.C. 2953.32 when it fails to place its findings on the record for review." *Id.* at ¶ 19. We stated:

> We further find guidance in the Ohio Supreme Court's reasoning requiring trial courts to issue findings on the record when granting or denying a motion for a new trial for the express purpose of appellate review: "[W]ithout some articulated basis for granting a new trial, the trial court's decision is virtually insulated from meaningful appellate review. As previously stated, an appellate tribunal will not reverse the trial court's ruling absent an abuse of discretion. However, when the trial court offers no reasons for its decision, the court of appeals practically must defer to the trial court's conclusion that the verdict was against the weight of the evidence." A*ntal v. Olde Worlde*

*Products, Inc.* (1984), 9 Ohio St.3d 144, 146, 9 Ohio B. 392, 459 N.E.2d 223.

*Id.* at ¶ 20. Based on that, we found that because the trial court

> offered no reasons for its denial of [the appellant's] application, we cannot simply defer to the trial court's discretion in this matter — especially in light of the overwhelming information presented in M.D.'s application and at the hearing, establishing that he is not only remorseful, but also that he is a highly productive member of society, a valued friend, father, son, and husband, and a man of high moral character.

*Id.* at ¶ 21.

{¶ 29} We reached the same conclusion in *State v. B.H.*, 8th Dist. Cuyahoga No. 106380, 2018-Ohio-2649, in which the trial court summarily denied the appellant's application for expungement under R.C. 2953.32. In reversing the trial court's decision, we stated,

> [T]he trial court summarily denied B.H.'s application; it did not state its findings on the record, either at the hearing or in its journal entry. Accordingly, we cannot discern from the record what discretion the trial court exercised. Did it determine that B.H. was not an eligible offender in light of her prior sealed convictions? Or did the trial court exercise its discretion to not consider the prior sealed convictions and conclude she was an eligible offender, but did not qualify for expungement under the other factors listed in R.C 2953.32(C)(1)? Without any findings or conclusions, it is impossible to tell. We cannot, however, simply defer to the trial court's discretion.

*Id.* at ¶ 15.

{¶ 30} While *M.D.* and *B.H.* concerned applications for expungement under R.C. 2953.32, we find their analyses apply in the instant case. Like those cases involving applications for expungement, we review a trial court's decision denying a petition for a CQE under an abuse 0f discretion standard. While the

state is correct that R.C. 2953.25 does not require the trial court to set forth its reasoning in denying a petition, the expungement statute also does not explicitly require such findings. Yet, we have found that those findings are essential for us to review for an abuse of discretion even in the absence of a statutory requirement.

{¶ 31} Without those findings, we are unable to uphold our appellate duty (reviewing for an abuse of discretion). We find that we are unable to discern what discretion the trial court exercised without having its reasoning in the record, including whether the trial court denied the petition because it was incomplete. Such a basis, however, would be an abuse of discretion because R.C. 2953.25 clearly prohibits a denial on such a basis. R.C. 2953.25(C)(4). Alternatively, the trial court could have denied Harris's petition because it found that she did not suffer a "collateral sanction." R.C. 2953.25(B)(2). Or it could have denied the petition because it concluded that the petition would not materially assist Harris in obtaining employment; or that Harris does not have a substantial need for the relief requested in order to live a law-abiding life; or because granting the petition posed an unreasonable risk of safety to the public or another individual. R.C. 2953.25(C)(3). Put simply, we are left to speculate why the trial court exercised its discretion in the way it did and are unable to review whether such an exercise was an abuse of that discretion.

{¶ 32} Therefore, we hold that a trial court must set forth its findings when denying a petition for a CQE, and we reverse and remand. To be clear, we are reversing and remanding this case based on the lack of findings set forth by the

trial court.  The trial court is still free to grant or deny Harris's petition within the confines of R.C. 2953.25.

{¶ 33} Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR