[Cite as *In re Jones*, 2024-Ohio-408.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| | JUDGES: |
| IN RE: | Hon. William B. Hoffman, P.J. |
| | Hon. John W. Wise, J. |
| AMANDA LYNN JONES | Hon. Craig R. Baldwin, J. |
| Petitioner-Appellant | Case No. 2023 CA 0028 |
| | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas,
Case No. 2023 CV 0073R

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     February 5, 2024

APPEARANCES:

For Appellee

JODIE SCHUMACHER
PROSECUTING ATTORNEY
MARTIN I. NEWMAN
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio  44902

For Petitioner-Appellant

AMANDA LYNN JONES
PRO SE
354 South Main Street
Mansfield, Ohio  44902

*Wise, J.*

{¶1}    Appellant Amanda Lynn Jones appeals the denial of her Petition for Certified Qualification for Employment entered in the Richland County Court of Common Plea.

{¶2}    Appellee is State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}    For purposes of this appeal, the relevant facts and procedural history are as follows:

{¶4}    In late December, 1992, Appellant Amanda Lynn Jones, known at that time as Amanda Branham Lothery, and Rajhi Render, a man with whom she was having an affair, along with Clarence Crosby and Aaron Bryant, entered into a conspiracy to murder Appellant's husband Jason Lothery. The alleged motive was life insurance money from Jason Lothery's military service.

{¶5}    On December 27, 1992, after Appellant and Rajhi Render were unable to find Jason Lothery, Render randomly murdered a man named William Scott Cox. It is not alleged that Appellant was a participant in Cox' murder. It was alleged at trial that Cox was confronted by Render and Bryant. One of them shot and killed Cox at close range with a .38-caliber revolver obtained from Defendant Crosby.

{¶6}    Several days later, on December 31, 1992, Appellant and Rajhi Render lured Jason Lothery into a motor vehicle, took him to a secluded area, shot him 3 times in the back of the neck, killing him, and then dumped his body in a ravine. At the time of the murder, Appellant and Jason Lothery had been married one day.

{¶7} Appellant was charged with one count of conspiracy to commit aggravated murder and three counts of obstructing justice. Render was charged with conspiracy to commit the aggravated murder of Jason Lothery, murder of William Cox with a firearm specification, aggravated murder of Jason Lothery with a firearm specification, and tampering with evidence. Crosby was charged with aiding and abetting in the aggravated murder of Jason Lothery, and four counts of tampering with evidence.

{¶8} Appellant was tried along with co-defendants Rajhi Render and Clarence Crosby, all of whom were charged in the death of Jason Lothery. Rajhi Render was also charged with the murder of William Scott Cox.

{¶9} Aaron Bryant was originally charged with conspiracy to commit the aggravated murder of Jason Lothery, aiding and abetting in the murder of William Scott Cox and tampering with evidence. Bryant entered into a plea bargain and in return for his testimony at the trial of the remaining defendants, he pled no contest and was convicted of involuntary manslaughter in the death of William Scott Cox, conspiracy and tampering.

{¶10} On June 11, 1993, Appellant was found guilty of the crimes alleged in the indictment.

{¶11} On April 25, 1995, Appellant's convictions were overturned by this Court based on inappropriate joinder of co-defendants, and a new trial was ordered.

{¶12} Prior to the second trial, Appellant entered into a negotiated plea deal wherein she received an indeterminant term on the Conspiracy to Commit Aggravated Murder charge of 7-25 years, plus 18 months on each of the three remaining charges.

{¶13} Appellant ultimately served 28 years in prison for her crimes and was released from prison on January 5, 2021.

{¶14} On January 5, 2022, Appellant filed her first Petition for Certificate of Qualification for Employment ("CQE"), pursuant to R.C. §2953.25, in the Richland County Court of Common Pleas, exactly one year after her release from prison.

{¶15} By Judgment Entry filed May 9, 2022, the trial court denied Appellant's petition.

{¶16} On February 15, 2023, Appellant filed a second Petition for Certificate of Qualification for Employment. In her petition for a CQE, she stated that she had been convicted of conspiracy to commit aggravated murder for the 1993 murder of her husband, Jason Earl Lothery. Appellant further stated that she was seeking a CQE so that she could "apply with the Chemical Dependency Board and if approved I can become a counselor for drug/alcohol addiction."

{¶17} On March 13, 2023, the trial court provided notice to both Appellant and Appellee that an investigation had been completed in the case.

{¶18} By Judgment Entry filed March 12, 2023, the trial court denied the petition for CQE, in a 4-page entry. The Judgment Entry listed 3 items which the trial court found Appellant failed to establish, to wit: (1) The petitioner has not established by a preponderance of the evidence that granting the petition will materially assist the individual in obtaining employment/occupational license; (2) The petitioner has not established by a preponderance of the evidence that the petitioner has a substantial need for the relief requested in order to live a law-abiding life; and (3) The petitioner has not established by a preponderance of the evidence that granting the petition would not pose an unreasonable risk to the safety of the public or any individual.

**{¶19}** In said Entry, the trial court reviewed the facts and explained its rationale for its denial of the petition. The trial court also included a condition that no further petitions may be filed until at least March 1, 2027.

**{¶20}** Appellant now appeals, raising the following errors for review:

**ASSIGNMENTS OF ERROR**

**{¶21}** "I. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING MRS. JONES' PETITION FOR A CQE WITHOUT INCORPORATING SPECIFIC FINDINGS OF FACT FOR EACH ELEMENT OF THE PETITION TO ALLOW FOR MEANINGFUL APPELLATE REVIEW, IN DEROGATION OF R.C. 2953.25(C)(3).

**{¶22}** "II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING MRS. JONES' PETITION FOR A CQE UNDER RC. 2953.25(C)(3) AND BY PLACING CONDITIONS ON HER TIME TO REFILE HER PETITION FOR A CQE INAPPROPRIATELY UNDER RC. 2953.25(C)(8)."

**I.**

**{¶23}** In her first assignment of error, Appellant argues the trial court abused its discretion in denying her petition for a CQE without specific findings. We disagree.

*Certificate of Qualification for Employment*

**{¶24}** A CQE "[c]reates a mechanism by which an individual who has been convicted of or pleaded guilty to an offense, who for a specified period of time has been released from incarceration and all supervision imposed after release or has received a final release from all other sanctions imposed, and who is subject to a "collateral sanction" may obtain from the court of common pleas of the county in which the individual resides a "certificate of qualification for employment" that will provide relief from certain bars on

employment or occupational licensing. *In re Bailey*, 2015-Ohio-413, 28 N.E.3d 578, ¶ 10 (8th Dist.), quoting Ohio Legislative Service Commission Final Analysis of Am.Sub.S.B. 337.

**{¶25}** R.C. §2953.25(D)(1) explains, in part, that a CQE "lifts the automatic bar of a collateral sanction" allowing a decision maker, such as a state agency, board, or commission, to "consider on a case-by-case basis whether to grant or deny the issuance or restoration of an occupational license or an employment opportunity." "The certificate constitutes a rebuttable presumption that the person's criminal convictions are insufficient evidence that the person is unfit for the license, employment opportunity, or certification in question." R.C. §2953.25(D)(2). Notwithstanding the presumption, "the agency may deny the license or certification for the person if it determines that the person is unfit for issuance of the license." *Id.*

**{¶26}** Additionally, a CQE can be used as evidence of a person's due care in hiring, retaining, licensing, or admitting the person to whom the CQE was issued, and it provides immunity to employers for claims of negligent hiring. R.C. §2953.25(G)(1) and (2). *In re Deran*, 6th Dist. No. L-22-1254, 2023-Ohio-2902, 223 N.E.3d 790, ¶¶ 21-22

**{¶27}** Under R.C. §2953.25(C)(3), the issuance of a CQE is at the court's discretion as long as the court "finds that the individual has established all of the following by a preponderance of the evidence:

(a) Granting the petition will materially assist the individual in obtaining employment or occupational licensing.

(b) The individual has a substantial need for the relief requested in order to live a law-abiding life.

(c) Granting the petition would not pose an unreasonable risk to the safety of the public or any individual."

*Analysis*

**{¶28}** Appellant argues that her petition established the three criteria necessary for issuing a CQE as set forth in R.C. §2953.25, and therefore the trial court's refusal to grant the CQE, without incorporating specific findings to allow for a meaningful review, was an abuse of discretion.

**{¶29}** It is well-established that demonstrating an abuse of discretion requires more than showing a mere error of law or judgment. It must be shown that the disputed trial court action was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶30}** Initially, we note R.C. §2953.25 does not contain a requirement that a trial court explain its reasons for denying a petition for a CQE.

**{¶31}** The Tenth District looked at this issue in *In re Betsacon*, 10th Dist. Franklin No. 18AP-515, 2018-Ohio-5367. In *Betsacon*, the appellant challenged the trial court's entry denying his petition, arguing that the entry was a "bare bone response" and that it failed to "provide subsequent reviewers any idea as to how or why the decision was made, making it difficult to review for appeal." *Id.* at ¶ 6. The Tenth District disagreed, stating:

> Appellant points us to no authority, statutory or otherwise, that supports his argument that the trial court was required to explain its reasons for denying the petition for CQE or provide a more detailed analysis of its determination to deny the petition. The text of R.C. 2953.25 does not include such a requirement.

**{¶32}** *Id.* at ¶ 8.

**{¶33}** The *Betsacon* court also noted that the appellant failed to request a hearing, leaving the court without a transcript that may "have provided some additional insight into the trial court's analysis." *Id.* at ¶ 9. The court further stated that the trial court's entry outlined the elements for granting a petition, and found that the appellant did not "suffer a collateral sanction as required by the statute[,]" and considered the "additional elements, one by one, finding [the appellant] did not establish the elements by a preponderance of the evidence." *Id.*

**{¶34}** The Eighth District, in *Harris v. Certificate of Qualification of Emp. Petition*, 8th Dist. No. 107828, 2019-Ohio-3658, 143 N.E.3d 1163, ¶¶ 25-26, in contrast, found that "[w]hile the Tenth District is correct that R.C. 2953.25 does not explicitly require a trial court to explain its reasons for denying a petition for a CQE, we find that a trial court must include its reasoning to allow for the necessary review on appeal."

**{¶35}** Upon our review of the record before us, we find that while it was not required to do so, the trial court below did include its reasons for denying Appellant's petition.

**{¶36}** Upon review of the three criteria necessary for issuing a CQE as set forth in R.C. §2953.25, we find:

**{¶37}** First, unlike the trial court, we find that Appellant has established that granting her petition would materially assist her in obtaining occupational licensing, which she currently cannot obtain due to her past convictions. Appellant's petition listed that she needed a CQE to apply to the Chemical Dependency Board to allow her to obtain a license to become a counsellor for drug and alcohol addiction.

**{¶38}** Second, with regard to why she had a substantial need for a certificate in order to live a law-abiding life, Appellant stated in her petition:

> Obtaining this certificate is not a substantial need for me to live a law-abiding life. I feel that is a choice and it is my choice. This will only help me to become more educated in a field that I desire to work in. For the last two years I have been a law-biding citizen and like every other law-abiding citizen I should have the ability to obtain education and a state license for any occupation I desire to work in.

**{¶39}** In her petition, Appellant also stated that, after being released from prison, she obtained gainful employment, has remained with the same company, and has received promotions within the company. She has therefore been living a law-abiding life and would continue to do so regardless of whether her petition was granted or denied.

**{¶40}** It seems inconsistent with the purposes and principles of the statute that a petitioner's accomplishment in building and leading a law-abiding life would disqualify her from satisfying the requirements of R.C. §2953.25. We therefore would not find that Appellant failed to establish the second criteria of R.C. §2953.25(C)(3).

**{¶41}** The third factor is whether granting Appellant's petition would pose an unreasonable risk to the safety of the public or any individual.

**{¶42}** As stated by the Eighth District in *In re Bailey*, 8th Dist. No. 101108, 2015-Ohio-413, 28 N.E.3d 578,

> "… a petitioner's criminal history is more often than not going to be at the heart of a trial court's decision to grant or deny a petition. The type of conviction, the amount of time served, and the length of time since the

petitioner's last conviction are all factors that a trial court may consider when reviewing the probation department's investigation. The statute itself confers upon the trial court broad discretion in determining whether a particular petitioner poses an unreasonable risk to the safety of the public or any individual. Had the legislature intended for trial courts to automatically issue CQEs to every petitioner, regardless of their criminal history, the statute would not have afforded the trial court any discretion when ruling on these petitions.

The purpose behind the statute is commendable. However, reasonable minds can differ as to what constitutes an unreasonable risk to the safety of the public. "This court's role is to determine whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made." *Wilmington Steel Prods. Inc. v. Cleveland Elec. Illum. Co.,* 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). "[W]here the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Beechler,* 2d Dist. Clark No. 09–CA–54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 67.

An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of will, of a determination, made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the

exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

**{¶43}** In denying Appellant's petition, the trial court stated the following:

The Petitioner engaged in a conspiracy to commit the premeditated murder of her husband of a day for a monetary gain. In the course of the conspiracy, a second person was murdered. The Petitioner was sentenced to a definite sentence of 4.5 years and an indeterminate sentence of 7 to 25 years. She served almost her entire sentence, spending twenty-eight years in prison, over sixty percent of her life. While she took advantage of her time in the institution to complete educational and rehabilitative programs, she has only been out of prison for one year. A co-defendant with a similar sentence was granted parole after only three years, demonstrating that the institution did not believe the Petitioner was appropriate for release until her sentence was almost completed.

Given the magnitude of the crime and the length of the sentence compared to the short time since she has been released, the Court does not believe that sufficient time has passed for the Petitioner to demonstrate that she has been rehabilitated. A more significant amount of time needs to pass before the Court would consider granting a CQE in this case.

The Court denied a similar motion on May 9, 2022. The Petitioner filed this second motion only nine months later. This is hardly a "more significant amount of time."

{¶44} Appellant argues the trial court abused its discretion in denying her petition based on the court's concern that she would pose an unreasonable risk to the safety of the public. Appellant argues she has lived a law-abiding life since her release from prison in January, 2021. Despite the fact that her prior conviction was violent in nature, Appellant argues that it occurred more than thirty years ago. Further, she argues that she "does not pose an unreasonable risk to the safety of the public or any individual because Mrs. Jones' conviction has nothing to do with any person or class of people in the line of work she is currently in or wants to aspire to. As stated earlier, Mrs. Jones wants to become licensed as a substance-abuse counsellor and has not been charged with a crime of any sort in over 30 years. A counsellor does not entail much more than sitting at a desk and talking to people; there is no medicine being prescribed or administered; she is not being physical with any person such as putting her hands on them; she has no power over any person; she is just there to counsel them-to be a voice of inspiration so that they can better themselves in their lives. Clearly, like those whom she would be counselling, Mrs. Jones has her own demons from her past and can use those demons to help others reflect on their own lives and where they may be heading if they should continue down the path that they are on." (Appellant's Brief at 7-8).

{¶45} However, as set forth above, it is evident from the trial court's entry that it does not agree. The trial court took into consideration the seriousness of Appellant's violent criminal history, the length of time she has spent in prison, and the investigative

report and clearly found the risk posed to the public by granting her petition was unreasonable. Given that the group of people that Appellant is seeking a license to counsel, those suffering from substance abuse, is a very vulnerable segment of society, safeguards need to be in place to protect them.

**{¶46}** Upon review, we find that Appellant has not provided sufficient evidence that the trial court's decision denying her Petition was unreasonable, arbitrary, or unconscionable.

**{¶47}** Based on the record before us, including the trial court's May 12, 2023, Entry, we simply cannot say that the trial court abused its discretion in denying Appellant's petition.

**{¶48}** Appellant's first assignment of error is overruled.

**II.**

**{¶49}** In her second assignment of error, Appellant argues the trial court erred in placing restriction on her time to refile a successive petition. We disagree.

**{¶50}** More specifically, Appellant argues that the trial court made "numerous factual errors and consider[ed] evidence dehors the record when denying Mrs. Jones' CQE petition and placing conditions on when she can file her next petition", including blaming her for an unrelated murder; incorrectly stating she has only been out of prison for one year; and referencing an unnamed co-defendant's sentence and release from prison. Additionally, Appellant argues that the trial court failed to take into consideration that she was a minor at the time of her offense. Appellant also argues that using co-defendant Render's sentence as a factor in determining when she can refile her petition is an abuse of discretion. Finally, Appellant argues that because the written investigation

report was not included as part of the trial court's findings, it used evidence dehors the record.

{¶51} In this case, the trial court, in placing conditions on the timing of the filing of any subsequent petition for a CQE by Appellant, stated:

Under R.C. § 2953.25(C)(8), if the Court denies a petition, the Court may place conditions on the individual regarding the individual's filing of a subsequent petition for COE. The Petitioner's Co-Defendant in this case, Rajhi Render, was sentenced to six years on a gun specification and 35 years to life for involuntary manslaughter (10-25 years), aggravated murder (20 to life) and escape (5-25 years). He is not eligible for parole until 3/1/2032. The Court is placing the condition that the Petitioner cannot file again until at least 3/1/2027 (five years less than the co-defendant's minimum prison sentence as the co-defendant's escape charge was not related to the Petitioner).

{¶52} Revised Code § 2953.25(C)(8), provides "… The court may place conditions on the individual regarding the individual's filing of any subsequent petition for a certificate of qualification for employment. The written notice must notify the individual of any conditions placed on the individual's filing of a subsequent petition for a certificate of qualification for employment."

{¶53} Upon review, we find the "mistakes" referred to by Appellant as to how long she had been out of prison and when she filed her petitions, to be harmless as it is clear from the trial court's decision that it was aware of how long Appellant has been out of prison, when she filed her first petition, and that she filed her second petition nine months

after the denial of the first one. The record also contains more than adequate information as to Appellant's age when she entered into the conspiracy to murder her husband for military service life insurance.

{¶54} As to the trial court's use of Appellant's co-defendants' sentences as a tool in fashioning a time for refiling of Appellant's petition, we find such "formula" and comparison to be unreasonable. While the statute is silent as to what the court can and cannot consider when imposing conditions on refiling we find that none of the other sentences were directly comparable to Appellant's sentences as one included a plea deal, and one involved a second murder and an escape charge. However, again, considering the seriousness and violent nature of the offense and the length of time Appellant has spent incarcerated, we do not find that the ultimate decision of the trial court that Appellant wait three more years to refile, for a total of five years since her release date, is unreasonable.

{¶55} We further find no requirement in the statute that the trial court make the investigative report part of the record. Rather, R.C. §2953.25(C)(I) provides:

> The court may order any report, investigation, or disclosure by the individual that the court believes is necessary for the court to reach a decision on whether to approve the individual's petition for a certificate of qualification for employment, except that the court shall not require an individual to disclose information about any record sealed under section 2953.32 of the Revised Code.

{¶56} Here, the trial court, based on the record before it, along with the information contained in the report, articulated its concerns by stating "[g]iven the magnitude of the

crime and the length of the sentence compared to the short time since she has been released, the Court does not believe that sufficient time has passed for the Petitioner to demonstrate that she has been rehabilitated."

{¶57} Upon review, based on the record before this Court and the reasons set forth above, we cannot find that the trial court abused its discretion in imposing conditions as to when Appellant may refile her petition.

{¶58} We therefore find Appellant's second assignment of error not well-taken and hereby overrule same.

{¶59} Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.


By: Wise, J.

Baldwin, concurs.

Hoffman, P. J., concurs in part and dissents in part.


JWW/kw 0121

*Hoffman, P.J., concurring in part, and dissenting in part*

**{¶60}** I concur in the majority's analysis and disposition of Appellant's first assignment of error.

**{¶61}** I respectfully dissent from the majority's decision to overrule Appellant's second assignment of error.  As does the majority, I, too, find the trial court's decision regarding when Appellant may next file her request for a CQE was unreasonable. Comparing the early release from prison of a co-defendant, who had apparently made a plea deal to testify against Appellant in exchange for a guilty plea to a reduced charge (Bryant), to Appellant, who served her full sentence, and considering the earliest release date of another co-defendant (Render), who committed two separate murders (one of which Appellant was not involved) as well as a separate escape charge, is unreasonable. Accordingly, I would sustain Appellant's second assignment of error and remand the issue for redetermination by the trial court without said comparative sentence analysis.